UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CARA WASHINGTON,** individually, and on behalf of others similarly situated, | Case No. 3:26-cv-00037 |
| Plaintiff, | Hon.: Michael J. Newman |
| **vs.** | Mag.: Peter B. Silvain, Jr. |
| **CARESOURCE MANAGEMENT SERVICES, LLC,** an Ohio limited liability company, | |
| Defendant. | |

**SECOND AMENDED[1] COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, CARA WASHINGTON ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant CARESOURCE MANAGEMENT SERVICES, LLC ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq*. (the "Ohio Wage Act"), Section 34a of Article II of the Ohio Constitution, and Ohio common law.

2. Plaintiff and all other similarly situated individuals work or worked for Defendant

[1] Defendant has stipulated in writing to the filing of this Second Amended complaint, pursuant to Fed. R. Civ. P. 15(a)(2).

as hourly, non-exempt Customer Care Specialists ("CCS") in the United States.

3. Pursuant to Defendant's company-wide policies and procedures, it failed to pay Plaintiff, and other similarly situated employees, for all hours worked, including statutory mandated overtime at time and a half inclusive of all non-discretionary remuneration earned for all hours worked over forty (40) hours in a single workweek. Plaintiffs and the similarly situated employees regularly worked more than forty (40) hours in a work week.

4. Specifically, Defendant's time rounding policy is implemented in a non-neutral fashion that results in CCSs disproportionately losing time worked due to unlawful time rounding and because it required the performance of compensable work before clocking into the computerized timekeeping system.

5. Defendant's systemic violations of state and federal wage laws were willful.

6. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Ohio Class, were violated and an award of unpaid wages, liquidated damages, compensatory damages, punitive damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make herself and the Collective and Ohio Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct.

## JURISDICTION

7. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

8. Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

9. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

10. Defendant's hourly, non-exempt employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

11. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13. This Court has personal jurisdiction over Defendant because it conducts business within the state of Ohio, has its principal place of business and headquarters in Dayton, Ohio, is registered with the Ohio Secretary of State and employs individuals within the state of Ohio.

14. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Ohio, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this District; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal

place of business in this District.

## PARTIES

16. Plaintiff Cara Washington ("Plaintiff") is an Ohio resident who has worked for Defendant as an hourly, non-exempt CCS in Ohio within the last two years.

17. Defendant paid Plaintiff for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $21.90 per hour. Additionally, Defendant paid Plaintiff nondiscretionary bonuses and shift differential pay.

18. Plaintiff previously signed a consent to join this collective action lawsuit. ECF No. 2, Washington Consent to Join.

19. Defendant is an Ohio corporation (Entity # 1086420) with its headquarters and principal place of business located at 230 N. Main St., Dayton, Ohio 45402.

20. Defendant is "a national, nonprofit managed care organization serving over 2 million members in 12 states."[2] Defendant provides government-sponsored health insurance plans, primarily focusing on Medicaid, Medicare, and health insurance marketplace options, including Affordable Care Act (ACA)-compliant plans. *See* fn. 1.

21. Defendant employs CCSs like Plaintiff as customer service representatives with the primary duty of handlinginbound and outbound calls from Defendant's members, providers and others, and assisting them with, among other things, questions and issues regarding benefits, coverage, and other issues regarding CareSource health insurance plans.

## GENERAL ALLEGATIONS

22. Defendant employed Plaintiff as a CCS within the past two years.

---

[2] *See* https://www.caresource.com/about-us/ (last accessed on 8/7/2026).

23. On August 6, 2021, Defendant sent to Plaintiff a written offer promising to pay her $17.00 for each hour she performed work as a CCS. The offer letter further instructed Plaintiff that if she wished to accept the offer, she should reply immediately confirming that she accepted Defendant's offer. Plaintiff accepted Defendant's offer and the document was thus electronically signed by Plaintiff and Defendant. Subsequently, Defendant offered to increase Plaintiff's hourly rate of pay. Plaintiff accepted Defendant's offer for increased pay in exchange for the continued performance of her job duties as a CCS.

24. Plaintiff and other similarly situated hourly employees accepted Defendant's offer of a fixed hourly rate in exchange for the performance of their job duties as CCSs.

25. Despite offering to pay Plaintiff and the other similarly situated CCSs at a fixed hourly rate for each hour worked, Defendant paid Plaintiff and all other CCSs pursuant to a rounding policy. Under this time rounding policy, Defendant rounded the CCSs' time to the nearest quarter of an hour.

26. At the same time, Defendant's uniform timekeeping policy prohibited all CCSs (including Plaintiff) from clocking in more than seven (7) minutes prior to the start of their scheduled shift.

27. Additionally, Defendant's uniform attendance and schedule adherence policy required all CCSs (including Plaintiff) to be call-ready at the start of their scheduled shift – meaning they needed to be prepared to field calls from Defendant's members, providers and others at the start of their scheduled shift.

28. Consequently, if the CCSs complied with Defendant's written policies, their time would routinely and systematically be rounded down. For example, if Plaintiff clocked in for her scheduled 8:00AM shift at 7:55AM, then she would lose five (5) minutes of time due to

Defendant's time rounding policy. The next day, if Plaintiff clocked in at 7:54AM for her 8:00AM shift, she would lose six (6) minutes of time due to Defendant's time rounding policy.

29. In addition to the time lost due to rounding, Plaintiff estimates that the cumbersome process of loading and logging into all of the computer systems that were required to be call ready at the start of her shift took, on most days, between fifteen (15) and twenty (20) minutes.

30. To comply with Defendant's rigid timekeeping, attendance and adherence policies, Plaintiff and other CCSs needed to begin booting up their computers off-the-clock and 15-20 minutes prior to their scheduled start time. Accordingly, not only did CCSs lose several minutes due to Defendant's time rounding policy, but they lost additional compensable time because the daily computer bootup process needed to be completed prior to CCSs' scheduled start time and typically took between 15-20 minutes.

31. Next, Defendant required CCSs (including Plaintiff) to be call ready the moment their unpaid half hour lunch period ended.

32. This required CCSs to return to their computers several minutes prior to the end of their lunch period to log back into essential computer programs.

33. Additionally, if Plaintiff or the other CCSs clocked in a few minutes prior to the end of their scheduled unpaid lunch, then that time was rounded away.

34. Defendant's timekeeping, attendance, and scheduled adherence policies required additional off-the-clock work and disproportionately resulted in CCSs losing time due to rounding.

35. Defendant's timekeeping, attendance, and adherence policies prohibited CCSs from clocking out prior to the end of their scheduled shift.

36. Although Plaintiff and the similarly situated CCSs regularly worked over 40 hours in a work week, Defendant's policies prohibited Plaintiff and the similarly situated CCSs from

reporting any hours worked outside of their scheduled shift or from reporting unscheduled overtime without advanced approval from management.

37. Defendant also required CCSs to work their entire shift and considered clocking out early to be an early departure that subjected them to discipline.

38. As a result, CCSs routinely clocked out a few minutes after the end of their shift. Under Defendant's time rounding policy, this consistently resulted in several minutes of pay being rounded away.

39. Additionally, after clocking out of Defendant's computerized timekeeping system, the CCSs were required to complete the computer log-off/shutdown process, which again occurred off-the-clock. Thus, CCSs again lost time due to both rounding and subsequent off-the-clock work.

40. Defendant's hourly, non-exempt employees like Plaintiff must adhere to rigid schedules that require working at least eight (8) hours per day, on average five (5) days each week, and forty (40) hours or more in a workweek. As such, the time lost due to rounding and off-the-clock work described herein routinely resulted in the deprivation of overtime wages.

41. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and other members of the Collective and Class.

42. Defendant knew or should have known that CCSs regularly worked outside of their scheduled hours by virtue of the records it maintains, including but not limited to the timestamps of log-ins on its computer systems and networks.

43. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CCSs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL

Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA).[3]

44. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2. "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.*

45. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

46. As stated above, aside from the unpaid work Defendant required its CCSs and other similarly situated employees to perform preparing their computers, when Plaintiff and other members of the Collective and Class clock in or out within the permissible timeframe before/after their scheduled start/end time, it is Defendant's policy to "round" their time to the nearest quarter hour. Defendant's rounding policy is illustrated in the sample paystub provided below:

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | 030 |
|---|---|---|---|---|---|
| ABI | 918103 | 101027 | | 0000480871 | 2 |

Page 1(Con't Next Page)

*CARESOURCE MANAGEMENT SERVICES LLC*
*230 N MAIN ST*
*DAYTON OH 45402*

**Earnings Statement**

Period Beginning: 11/10/2024
Period Ending: 11/23/2024
Pay Date: 11/29/2024

Filing Status: Single/Married filing separately
Exemptions/Allowances:
Federal: Standard Withholding Table

**CARA ELAINE WASHINGTON**
[redacted]

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 21.1800 | 80.00 | 1,694.40 | 34,941.72 |
| Overtime | 32.0240 | 10.00 | 320.24 | 344.58 |
| Incentvbon | | | 250.00 | 2,750.00 |
| Shfevening | 3.1770 | 8.00 | 25.42 | 26.22 |
| Bereavement | | | | 338.83 |
| FLOAT | | | | 169.42 |
| Gift Card | | | | 29.02 |
| Holiday | | | | 1,186.08 |
| HRT2H | | | | 285.90 |
| Prvntv | | | | 127.08 |
| Pto | | | | 3,801.82 |
| Well Reward | | | | 55.00 |
| **Gross Pay** | | | **$2,290.06** | 44,055.67 |

| Other | this period | year to date |
|---|---|---|
| 7Slif | -11 .43 | 274.32 |
| 80 Ded Hlth Pln | -99 .11* | 3,300.04 |
| Er Ad&D | | 12.73 |
| Er Ltd | | 90.63 |
| Er Std | | 164.92 |
| Lyeap | | 108.11 |
| Vitwelcr | | -921 .40 |
| 2X Life | | 95.19 |
| **Net Pay** | **$1,777.03** | |
| Chkck1 | -1 ,777.03 | |
| **Net Check** | **$0.00** | |

[3] *See*, https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited 2/3/26).

47. The U.S. Department of Labor adopted a regulation that generally allows rounding practices. However, Defendant's rounding policy does not qualify as a permissible rounding policy under the FLSA. *See* 29 C.F.R. § 785.48(b).

48. The regulation provides that such rounding practice will be accepted, "provided it is used in such a manner that will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*.

49. If an employer's rounding practice is not implemented in a manner that permits both upward and downward rounding, then the system is not neutral and will result, over a period of time, in a failure to compensate employees properly for all the time they have actually worked.

50. In this case, as a matter of both policy and universal practice, CCSs are prohibited from clocking in more than seven minutes before the start of their scheduled shift. At the same time, Defendant also required them to be call-ready at the start of their scheduled shift.

51. Similarly, CCSs are not allowed to clock out early or more than seven minutes after the end of their scheduled shift without risk of discipline.

52. And finally, Defendant expected CCSs to be call-ready the moment their scheduled lunches ended, which required them to return from lunch a few minutes early to log back into any of the essential work programs that they logged off of prior to lunch or were automatically logged out of prior to lunch.

53. The practice of rounding against the employee is a regular practice, enshrined in company policy rather than a rare or random event.

54. The way Defendant implements its rounding policy, when combined with Defendant's other workplace policies, favors the Defendant disproportionally. Thus, Defendant's time rounding policy is unlawful.

55. Additionally, in order to perform their job duties, CCSs were required to engage in a cumbersome computer bootup process that took, on average, between 15-20 minutes before every shift. This computer bootup process occurred off-the-clock and entailed opening programs that were integral and indispensable to the performance of the CCSs' job duties. CCSs could not perform their job duties without completing this process.

56. Furthermore, the only reason for CCSs to connect to Defendant's VPN or log into these other work programs was to perform their job duties as a CCS.

57. Accordingly, in addition to the time rounded lost due to Defendant's time rounding policy, CCSs lost additional time at the beginning of their shift, in the middle of their shift (when returning from lunch), and at the end of their shifting logging into or out of computer programs that were essential, integral, and indispensable to their job duties.

## OHIO WAGE ACT AND FLSA COLLECTIVE ACTION DEFINITION AND ALLEGATIONS

58. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA and O.R.C. § 4111.10(C) on her own behalf and on behalf of:

> **all hourly Customer Care Specialists (CCSs) who work or worked for Defendant at any time during the applicable statute of limitations up through and including judgment and who were subject to Defendant's time rounding policy.**

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition if necessary. Allegations pertaining to violations of the Ohio Wage Act herein only pertain to CCSs that worked in Ohio during the relevant statutory period, whereas allegations of FLSA violations pertain to all CCSs, regardless of location, that worked during the relevant statutory period.

59. Defendant is liable under the FLSA and Ohio Wage Act for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated employees.

60. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the Collective were not paid all premium overtime compensation at time-and-one-half their rate calculated based on the appropriate regular rate of pay under the law, inclusive of all non-discretionary remuneration earned when they worked beyond forty (40) hours in a workweek.

61. Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the Collective performed.

62. Defendant maintained records of when Plaintiff and the members of the Collective logged into computer software.

63. Defendant implemented and enforced an unlawful time-rounding policy, as explained herein.

64. Upon information and belief, Defendant is applying the same unlawful compensation policies to all similarly situated employees.

65. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA and Ohio Wage Act with respect to Plaintiff and the members of the Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the members of the Collective, all premium overtime wages at time-and-one-half of their rate calculated based on the appropriate regular rate of pay under the law, inclusive of all non-discretionary renumeration earned, for hours worked in excess of forty (40) hours per workweek;

b. Willfully implementing and enforcing an unlawful (non-neutral) time rounding system;

c. Willfully instructing Plaintiff and the members of the Collective to perform work off-the-clock; and

d. Willfully failing to record all time that their employees, including Plaintiff

and the members of the Collective, worked for the benefit of Defendant.

66. Defendant is aware or should have been aware that federal law requires it to pay Plaintiff and the members of the Collective overtime premiums at time-and-one half of their rate calculated based on the appropriate regular rate of pay under the law, inclusive of all non-discretionary remuneration earned, for hours worked in excess of forty (40) per workweek.

67. Defendant’s unlawful conduct has been widespread, repeated, and consistent.

68. A collective action under the FLSA and Ohio Wage Act is appropriate because the employees described above are “similarly situated” to Plaintiff under 29 U.S.C. § 216(b) and (for the CCSs in Ohio) under O.R.C. § 4111.10(C).

69. The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan (including Defendant’s time-rounding policy); and (d) their claims are based upon the same factual and legal theories.

70. The employment relationships between Defendant and every proposed Collective member are the same and differ only by name, location, and rate of pay.

71. The key issue – the amount of uncompensated off the clock work owed to each employee – does not vary substantially among the proposed Collective members.

72. Many similarly situated current and former members of the Collective have been underpaid in violation of the FLSA and Ohio Wage Act and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

73. Court-supervised notice of this lawsuit should be sent to the Collective pursuant to 29 U.S.C. § 216(b) and (for CCSs in Ohio) pursuant to O.R.C. § 4111.10(C).

74. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

75. Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

76. The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

**RULE 23 OHIO CLASS ACTION ALLEGATIONS**

77. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> **all hourly Customer Care Specialists (CCSs) who work or worked for Defendant in Ohio at any time during the applicable statute of limitations up through and including judgment.**

(hereinafter referred to as the "Rule 23 Ohio Class"). Plaintiff reserves the right to amend this definition as necessary.

78. The members of the Rule 23 Ohio Class are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Ohio Class members. Rule 23 Ohio Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79. There is a well-defined community of interest among Rule 23 Ohio Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Ohio Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant had a contract under Ohio law with Plaintiff and the other CCSs to pay them at a specified hourly rate for each hour worked;

b. Whether Defendant breached its contract under Ohio law with Plaintiff and the other CCSs to pay them at a specified hourly rate for each hour worked; and

c. Whether Defendant was unjustly enriched under Ohio law by failing to pay Plaintiff and the other CCSs for each hour worked as described herein.

80. Plaintiff's claims are typical of those of the Rule 23 Ohio Class in that she and all other Rule 23 Ohio Class members suffered damages as a direct and proximate result of the Defendant's common and systemic timekeeping and payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Ohio Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Ohio Class members.

81. Plaintiff will fully and adequately protect the interests of the Rule 23 Ohio Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Ohio Class.

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Ohio Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

83. This case will be manageable as a Rule 23 Ohio Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked

computer and payroll systems that will allow the class, wage, contract, unjust enrichment, and damages issues in this case to be resolved with relative ease.

84. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the FLSA Overtime Provisions**

86. Plaintiff re-alleges and incorporates all previous paragraphs herein.

87. At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

88. At all times relevant to this action, Plaintiff and the Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

89. Plaintiff and the Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

90. Plaintiff and the Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

91. At all times relevant, Defendant "suffered or permitted" Plaintiff and the Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

92. At all times relevant to this action, Defendant required Plaintiffs and the Collective to perform *no less* than fifteen (15) to twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

93. Defendant uniformly implemented its time rounding policy in a non-neutral manner to the detriment of Plaintiff and the FLSA Collective.

94. In workweeks where Plaintiff and other Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials, nondiscretionary incentive pay, and all other nondiscretionary renumeration where applicable. 29 U.S.C. § 207.

95. Defendant's violations of the FLSA were knowing and willful.

96. Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for all work activities, but did not.

97. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(O.R.C. § 4111.10(C) Ohio Collective Action)**
**Violations of the Ohio Minimum Fair Wage Standards Act**

98. Plaintiff re-alleges and incorporates all previous paragraphs herein.

99. The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* O.R.C. §§ 4111, *et seq.*

100. The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours

worked over forty (40) in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and 13 of the Fair Labor Standards Act of 1938." *See* O.R.C. §4111.03(A); 29 U.S.C. § 207(a)(1). Like the FLSA, the Ohio Wage Act requires the inclusion of all non-discretionary remuneration earned in the calculation of the overtime rate.

101. At all times relevant to this action, Plaintiff and each individual member of the Collective who worked in the State of Ohio were not exempt from the overtime wage provisions of the Ohio Wage Act.

102. At all times relevant to this action, Defendant was an "employer" covered by the Ohio Wage Act and has been thus required to comply with its mandates.

103. At all relevant times, Plaintiff and the Collective were covered "employees" of Defendants pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

104. Defendant violated the Ohio Wage Act by willfully refusing to pay Plaintiff and the Collective the statutorily mandated overtime premium of 150% of their regular rate (inclusive of all non-discretionary remuneration earned) for all hours worked beyond forty (40) in a workweek during the relevant time period.

105. In violating the Ohio Wage Act, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable Ohio law.

106. Defendant is liable to Plaintiff and the Collective for the full amount of the overtime wages owed, plus "an additional two times the amount of the back wages" pursuant to O.R.C. Const. Art. II, § 34a.

**COUNT III**
**(Plaintiff and the Collective)**
**Willful Violation of FLSA and O.R.C. § 2307.60**

107. Plaintiff re-alleges and incorporates all previous paragraphs herein.

108. The FLSA, 29 U.S.C. § 216(b), imposes criminal penalties for willful violations of the FLSA.

109. By Defendant's acts and omissions described herein, Defendant has willfully violated the FLSA, and Plaintiff and the Collective have been injured as a result.

110. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

111. As a result of Defendant's willful violations of the FLSA, Plaintiff and the Collective members are entitled to compensatory, exemplary, and punitive damages pursuant to O.R.C. § 2307.60.

**COUNT IV**
**(Rule 23 Ohio Class Action)**
**Breach of Contract**

112. Plaintiff realleges and incorporates all previous paragraphs herein.

113. This Count applies only to workweeks where the FLSA and the Ohio Wage Act's overtime protections are inapplicable (less than 40 hours) and to the extent no statute provides for recovery of the unpaid wages described herein.

114. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Ohio Class member to pay each CCS for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Ohio Class members performed on Defendant's behalf.

115. Defendant's contractual promises to pay Plaintiff and each Rule 23 Ohio Class member's applicable hourly rate is evidenced by, among other things, their offer letters and each pay stub issued to Plaintiff and the Rule 23 Ohio Class members.

116. Upon information and belief, each Rule 23 Ohio Class member, including Plaintiff,

has an hourly rate of approximately $15.00-$20.00 per hour.

117. Plaintiff and every other Rule 23 Ohio Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with unlawful time rounding policy and practices and other timekeeping policies and practices, described herein.

118. By not paying Plaintiff and every other Rule 23 Ohio Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Ohio Class.

119. Despite typically being scheduled to work forty hours in a week, on occasion, Rule 23 Ohio Class members missed time from work causing them to work under 40 hours in a given week.

120. To the extent there is no other state law remedy available, Plaintiff and the Rule 23 Ohio Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

121. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and every other member of the Rule 23 Ohio Class have been damaged (to the extent there is no other state law remedy) in an amount to be determined at trial.

**COUNT V**
**(Rule 23 Ohio Class Action)**
**Unjust Enrichment**

122. Plaintiff re-alleges and incorporates all previous paragraphs herein except for any

paragraph, sentence, or averment that alleges a contract to pay wages for all hours worked existed between the Plaintiff and Defendant, or the Rule 23 Ohio Class members.

123. This Count is pled in the alternative to Count IV, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3) in the event it is determined that no employment contract or agreement existed between Plaintiff and Defendant and the Rule 23 Ohio Class members and Defendant, as alleged in Count IV. In other words, to the extent that this Court ultimately finds that no enforceable contract expressly governs the claims arising from the allegations in this Complaint, nor does any statute, Defendant is nonetheless liable for unjustly enriching itself at Plaintiff's and the Rule 23 Ohio Class members' expense.

124. This Count applies only to workweeks where the FLSA and Ohio Wage Act's overtime protections are inapplicable (less than 40 hours).

125. "In Ohio, a plaintiff must establish the following three elements to prove unjust enrichment: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Monahan v. Smyth Auto., Inc.*, No. 1:10-CV-00048, 2011 WL 379129, at *5 (S.D. Ohio Feb. 2, 2011).

126. Plaintiff and the Rule 23 Ohio Class conferred a benefit upon Defendant by providing valuable work for Defendant (i.e. they performed the job duties required of a CCS) during times that Defendant did not pay them any compensation for due to its non-neutral rounding policy.

127. Plaintiff and the Rule 23 Ohio Class conferred a benefit upon Defendant by providing valuable work for Defendant (i.e., they performed the job duties required of a CCS) during times that Defendant did not pay them any compensation due to its failure to pay for all

hours worked as described herein.

128. Defendant had actual and constructive knowledge of the benefits conferred by Plaintiff and the Rule 23 Ohio Class by virtue of the fact that Defendant established the processes that required the off-the-clock work and time rounding system, and also by virtue of its electronic records that provide timestamps of when CCS access, load, log-in, or clock-into Defendant's computer software.

129. Allowing Defendant to retain the benefits of the unpaid work conferred by Plaintiff and the Rule 23 Ohio Class on Defendant would be unjust.

130. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiff and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf, and on behalf of the putative Collective and on behalf of the Rule 23 Ohio Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I and Count III);

b. Certifying this case as a collective action in accordance with O.R.C. § 4111.10(C) with respect to the FLSA claims set forth herein (Count II);

c. Certifying this action as a class action (for the Rule 23 Ohio Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims for common law breach of contract and unjust enrichment (Counts IV-V);

d. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Collective members and the Rule 23 Ohio Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

e. Designating Plaintiff as the representatives of the Collective action and the Rule 23 Ohio Class, and undersigned counsel as collective and class counsel for the same;

f. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g. Declaring Defendant's violation of the FLSA was willful;

h. Declaring Defendant violated the Ohio Wage Act;

i. Declaring Defendant's violation of the Ohio Wage Act was willful;

j. Declaring Defendant breached its contract with Plaintiff and the Rule 23 Ohio Class as alleged herein, or, alternatively, that Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Ohio Class for all hours worked as alleged herein;

k. Granting judgment in favor of Plaintiff, the Collective, and the Rule 23 Ohio Class and against Defendant and awarding Plaintiff and the Collective, and the Rule 23 Ohio Class the full amount of damages and liquidated damages available by law;

l. Awarding treble damages to members of the Collective who worked for Defendant in Ohio, as permitted by the Ohio Wage Act and O.R.C. Const. Art. II, § 34a;

m. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

n. Awarding other pre- and post-judgment interest to Plaintiff, the FLSA Collective, and the Rule 23 Ohio Class on these damages;

o. Awarding Plaintiff and the FLSA Collective compensatory, exemplary, and punitive damages; and

p. Awarding such other and further relief as this Court deems appropriate.

## CONTINUED RELIANCE ON PREVIOUS JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby continues to demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 28, 2026

Respectfully Submitted,

*/s/Charles R. Ash, IV*
Charles R. Ash, IV (*PHV*)
**ASH LAW, PLLC**
43000 W. 9 Mile Rd., Ste. 301
Novi, MI 48375
Phone: (734) 234-5583
cash@nationalwagelaw.com

**MARKOVITS, STOCK & DEMARCO, LLC**
Terence R. Coates, Esq. (0085579)
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
Phone: 513-651-3700
tcoates@msdlegal.com

**SHAVITZ LAW GROUP, P.A.**
Paolo Meireles (PHV)
Theresa Waugh (PHV)
Tamra Givens (PHV)
622 Banyan Trail, Suite 200
Boca Raton, FL 33431
Phone: (561) 447-8888
pmeireles@shavitzlaw.com
twaugh@shavitzlaw.com
tgivens@shavitzlaw.com

*Counsel for Plaintiffs and the Putative Collective/Class Members*